**Elizabeth Shaw, Esq. | BBO #: 713541**
**Law Offices of Rachel L. Rado, LLC**
**175 Portland Street, 2nd Floor.**
**Boston, MA 02114**
**(t) 617-871-6030 | (f) 877-246-8795**
**(e) eshaw@rachelradolaw.com**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DIEGO LEANDRO VELASQUEZ RINCON,**<br>     Petitioner,<br><br>v.<br><br>**ANTIONE MONIZ,** Superintendent, Plymouth County Correctional Facility, **PATRICIA HYDE,** Field Office Director, **KRISTI NOEM,** U.S. Secretary of Homeland Security, and **PAM BONDI,** U.S. Attorney General<br>     Respondents. | Civil Action No. 1:25-CV-12633-BEM<br><br>**PLAINTIFF'S RESPONSE** |

### I.    INTRODUCTION AND STATEMENT OF ARGUMENT

**A. Summary of Argument: The Undisputed Facts Mandate Habeas Relief**

The Petitioner, Diego Leandro Velasquez Rincon (hereinafter "Mr. Velasquez"), challenges his continued custody under 28 U.S.C. § 2241. The facts presented in the record, including those documented by the Respondents themselves, overwhelmingly support the issuance of the Writ of Habeas Corpus. Mr. Velasquez has been actively pursuing legal status based on his fear of return to Colombia through asylum. This fear has been deemed credible by an immigration judge. His continued detention lacks any legitimate regulatory basis and is therefore arbitrary and punitive.

The Government's core contention is that the Petitioner is subject to mandatory, non-reviewable detention pursuant to 8 U.S.C. § 1225(b)(2), relying on an expansive interpretation of the detention statute endorsed by the Board of Immigration Appeals (BIA) in Matter of Yajure Hurtado. This legal position is flawed, as it contradicts the functional distinction between border inspection (§ 1225) and interior enforcement (§ 1226(a)). The facts of the arrest—apprehension in Chelsea, Massachusetts, pursuant to an I-200 warrant referencing § 1226(a)—demonstrate that the proper statutory framework is discretionary detention under 8 U.S.C. § 1226(a). Mr. Velasquez was issued a Notice to Appear (NTA) alleging that he is inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), which, as the Respondents concede in their Opposition, vacated the Form I-860, Notice and Order of Expedited Removal, and placed Petitioner in removal proceedings pursuant to 8 U.S.C. § 1226(a).

Furthermore, the record establishes the complete absence of a legitimate regulatory purpose for detention. The Government's Declaration confirms that Mr. Velasquez has no criminal convictions, although he does concede that he does have one drug-based charge pending against him. Additionally, he has not been able to make a case for his innocence in criminal court—due to ICE taking him away from the pending proceedings and making him unavailable for further court dates—or a case to show he is not a danger to the community in Immigration court. Respondents were correct in identifying that "the immigration court is the proper venue to assess in the first instance whether Petitioner is a flight risk or poses a danger to the community — particularly considering the recent criminal activity Petitioner is alleged to have committed." Doc. 8 at 17. This Petition seeks to avail the Petitioner's constitutional right to have a bond hearing under 8 U.S.C. § 1226(a), which has been foreclosed by the Respondents' expansive and unfounded reading of the law.

### B. Requested Relief

Petitioner respectfully requests that this Court issue a Writ of Habeas Corpus and order his immediate release on personal recognizance. Alternatively, the Court should order an individualized bond hearing before an Immigration Judge (IJ) within three days, with the burden of proof placed squarely on the Government to justify continued detention by clear and convincing evidence, consistent with First Circuit jurisprudence governing prolonged detention.

## II. PRELIMINARY PROCEDURAL MATTERS

### A. Substitution of Proper Respondent Cures Technical Defect

The Respondents correctly note that Petitioner initially misidentified the Superintendent of the Plymouth County Correctional Facility, Ralph Mattivelo, and concede that the only proper respondent is Antone Moniz. Respondents cite the Supreme Court rule in *Rumsfeld v. Padilla*, which mandates that the appropriate respondent in a habeas petition challenging physical detention is the immediate custodian—the warden of the facility.

Petitioner acknowledges this procedural requirement and, contemporaneously with this filing, is submitting a Motion to Amend the Petition to substitute Antone Moniz for Ralph Mattivelo, as required by the *Padilla* standard. This correction cures the technical defect, rendering the Respondents' objection to the identity of the physical custodian moot. The error, which is often rectified by subsequent amendment, does not touch upon the merits of the Petitioner's core claim: the illegality of his detention based on the statutory authority asserted by ICE. The Court should proceed to adjudicate the substantive issue of whether the Petitioner is entitled to a bond hearing, rather than dismiss the petition on a curable technicality regarding the name of the jailer.

3

### B. Jurisdiction and Exhaustion

This Court possesses subject matter jurisdiction over the Petition pursuant to 28 U.S.C. § 2241, as the Petitioner challenges the legality of his custody predicated upon alleged violations of U.S. statutes and his constitutional right to due process.

While the government notes that the Petitioner reserved his right to appeal the IJ's custody determination to the Board of Immigration Appeals (BIA), administrative exhaustion is properly waived in this instance. The IJ's decision on September 18, 2025, that the Petitioner was ineligible for bond was a purely legal determination based entirely on the government's erroneous assertion of mandatory detention under § 1225. Requiring the Petitioner to appeal this legal question to the BIA—an administrative body bound by the Attorney General's holding in *Matter of M-S-*, which created this flawed legal standard—would be futile. Federal courts in this District have consistently found jurisdiction to address the statutory interpretation question underlying *Matter of M-S-* without requiring further administrative process, recognizing that the core legal challenge is to the *ultra vires* application of the statute itself, a matter already decided negatively against the government in this jurisdiction.

The Court possesses unquestionable subject matter jurisdiction over this civil detention claim under 22 U.S.C. § 2241 (Habeas Corpus) and the Suspension Clause (Article I, § 9, cl. 2). The tradition of the Great Writ requires prompt judicial consideration of challenges to executive detention.

### III. STATEMENT OF UNDISPUTED FACTS ESTABLISHING § 1226(a) DETENTION AUTHORITY

The Respondents' statement of law, far from supporting their mandatory detention claim, confirms the statutory shift that took Petitioner out of the mandatory detention regime of § 1225.

The facts establish that the legal authority governing Petitioner's detention converted from § 1225 to § 1226(a) in January 2022.

### a. The Statutory Process of Conversion: Credible Fear Interview and Vacatur of the I-860

Petitioner was apprehended near Eagle Pass, Texas, on December 8, 2021, without having been inspected, admitted, or paroled. He was classified as an applicant for admission, and on December 9, 2021, CBP issued him a Form I-860, Notice and Order of Expedited Removal. This action initiated the expedited removal process governed by 8 U.S.C. § 1225(b)(1). When Petitioner claimed a fear of return, he was referred for a credible fear interview (CFI).

The process of expedited removal, and its corresponding mandatory detention authority, was terminated by subsequent administrative actions. Although USCIS initially issued a negative credible fear finding on December 27, 2021, an Immigration Judge (IJ) formally reviewed this determination and, on January 10, 2022, vacated USCIS's negative credible fear finding. This successful credible fear review required the government to commence full removal proceedings under 8 U.S.C. § 1229a.

The Respondents concede the procedural consequence of this transition: on January 20, 2022, ICE filed a Notice to Appear (NTA) to initiate the § 1229a proceedings, and the government explicitly states that the filing of the NTA "automatically vacated the Form I-860, Notice and Order of Expedited Removal." The mandatory detention requirement of § 1225 is intrinsically linked to the expedited removal order. By vacating the I-860, the government administratively terminated the basis for proceeding under the mandatory detention framework of § 1225(b)(1).

### b. ICE's Prior Exercise of Discretion and Vesting Presence

Following the vacatur of the Expedited Removal Order, Petitioner was released on January 21, 2022, on interim parole and a monetary bond of $1,500. This supervisory release enabled the Petitioner to maintain a physical presence in the United States for three and a half years, during which time he filed for asylum in a timely manner, thereby pursuing lawful status.

Petitioner was re-detained on August 13, 2025, following a state court arrest for misdemeanor charges (for which the state court released him on his own recognizance). To effect the re-detention, ICE utilized a Form I-200, Warrant for Arrest of Alien. The use of the Form I-200 is highly instructive, as this administrative warrant is explicitly issued pursuant to INA § 236 and 8 C.F.R. part 287, confirming that the operational authority relied upon by ICE Enforcement and Removal Operations (ERO) was 8 U.S.C. § 1226, the discretionary detention statute. Detention under § 1225 typically occurs incident to a warrantless border stop or during the initial expedited screening, not via a warrant specifically linked to § 1226 enforcement. The internal reliance on the § 1226 authority for the re-arrest sharply contradicts the subsequent legal argument made by the Respondents' counsel that the detention is mandatory under § 1225.

### IV. LEGAL ARGUMENT: PETITIONER IS SUBJECT TO DISCRETIONARY DETENTION UNDER 8 USC § 1226(a)

The fundamental premise of the Respondents' argument—that Petitioner's detention is mandated by 8 U.S.C. § 1225(b)(1)—is legally flawed because it ignores the statutory scheme that dictates the transition of detention authority once an alien moves beyond the expedited removal process.

### a. Statutory Construction: Termination of Mandatory Authority

Section 1225 is specific to the process of inspection and admission, primarily targeting aliens "arriving in the United States." While § 1225(a)(1) defines an applicant for admission broadly, the corresponding mandatory detention provision, § 1225(b)(2), must be read in the context of border operations. An alien who has resided in the interior for 22 years is functionally distinct from an arriving alien subject to inspection.

In contrast, § 1226(a) explicitly provides for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States." This provision is the established authority for interior enforcement actions against non-admitted aliens who are apprehended within the United States. Mandatory detention under § 1225(b)(1)(B)(iv) is a mechanism tied to the expedited removal process, commanding detention "pending a final determination of credible fear of persecution and... until removed." This clause governs the initial phase of expedited removal. However, 8 C.F.R. § 1208.30(g)(2)(iv)(B) dictates that if an IJ finds a credible fear, the IJ "shall vacate the Notice and Order of Expedited Removal" and refer the case to proceedings under § 1229a.

The Government contends that Petitioner is held under 8 USC § 1225(b)(1) because he remains an "applicant for admission," while also conceding that the Form I-860 (the Notice and Order of Expedited Removal) was automatically vacated when the NTA was filed. In 2021, Mr. Velasquez was detained shortly after he crossed into the United States and was issued a Form I-860. At that time, he was an applicant for admission lawfully held under § 1225(b)(1). However, on January 20, 2022, ICE filed an NTA alleging Mr. Velasquez is an alien present without admission or parole by an immigration officer who is inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). He was released by ICE the next day, on January 21, 2022, on an Order of

7

Recognizance, a form of conditional parole. *De Andrade v. Moniz et al.*, 25-cv-12455-FDS, District of MA (7 Oct 2025) (p. 8 (citing *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007)). Once the expedited removal order is vacated, the legal basis for applying the mandatory detention component of that procedure ceases to exist. The case is then governed by § 1229a, and the detention authority must follow suit, transitioning to the discretionary provisions of § 1226(a), which govern aliens detained pending the outcome of general removal proceedings. The government cannot simultaneously acknowledge the vacatur of the Expedited Removal Order, which is the statutory foundation for § 1225 detention, yet maintain that the mandatory detention provision survives that vacatur.

The Respondents argue that Petitioner's prior release on bond and parole on January 21, 2022, was merely an exercise of discretionary parole authority under 8 U.S.C. § 1182(d)(5). While the agency has the discretion to parole any arriving alien, the very fact that the agency exercised this discretion to grant Petitioner a release for over three years further negates the claim that his detention was *mandatorily required* by law during that period. Upon re-arrest, the governing detention statute for an alien in ongoing § 1229a removal proceedings who has been released on supervision must revert to the general detention authority of § 1226(a).

### b. *Matter of M-S-* is *Ultra Vires* and Lacks Deference

The core of the government's erroneous mandatory detention claim is its reliance on the 2019 Attorney General decision in *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019). *Matter of M-S-* held that an alien transferred from expedited removal to full removal proceedings after a positive credible fear finding remains ineligible for bond under § 1226 because their fundamental legal status remains that of an "applicant for admission" perpetually subject to § 1225 detention.

This administrative interpretation, however, has been consistently and correctly deemed *ultra vires* by federal courts nationwide. Courts determine that this reading effectively creates a mandatory, non-reviewable detention class not actually authorized by Congress, contradicting the clear intent of the INA's transition mechanism. Because *Matter of M-S-* disregards the procedural effect of vacating the I-860 and transitioning to § 1229a, it represents administrative fiat rather than a permissible reading of the statute, thereby forfeiting any claim to judicial deference.

### c. Controlling District Court Precedent Forecloses Mandatory Detention

The most compelling refutation of the Respondents' position lies in the controlling precedent within the District of Massachusetts, which has directly addressed and rejected this very mandatory detention theory asserted here.

The petitioner's situation is virtually indistinguishable from that presented in *Diaz Martinez v. Hyde,* ⸺ F. Supp. 3d ⸺, 2025 WL 2084238 (D. Mass. July 24, 2025*),* and *Romero v. Hyde*, --- F. Supp. 3d ---, 2025 WL 2403827, at *1 (D. Mass. Aug. 19, 2025), both decided in this District. Those cases involved aliens initially subject to § 1225 who were subsequently placed in § 1229a proceedings, released, and later re-detained.

In *Martinez v. Hyde,* the Court found the detention unlawful, emphasizing that the government's position attempted to apply § 1225(b)(2) to an alien who had resided in the country for a significant period. The court ultimately ordered a bond hearing under 8 U.S.C. § 1226(a) and specifically enjoined the government from denying bond based on the mandatory detention claim under § 1225(b)(2). Similarly, in *Romero v. Hyde*, the District Court noted that the government's interpretation, which would mandate the detention of potentially hundreds of thousands of individuals residing in the United States, was "contrary to the plain text of the statute and the overall statutory scheme."

9

The Respondents attempt to distinguish these controlling cases by claiming the Petitioner was "always treated" as an applicant for admission subject to mandatory detention. The government's own actions undermine this assertion:

1. Legal Process: Petitioner's I-860 was formally vacated by an Immigration Judge in January 2022.

2. Physical Release: Petitioner was released into the country on bond/parole for over 3.5 years.

3. Arrest Mechanism: ICE used a Form I-200, Warrant for Arrest of Alien, which is the standard mechanism for arrests under the discretionary detention provision of § 1226, not the initial warrantless detention of an applicant at the border.

These facts align perfectly with the factual pattern in *Martinez* and *Romero*, which demonstrated a clear shift in jurisdiction from border processing to interior enforcement. Accordingly, Petitioner's detention must be governed by the discretionary provisions of § 1226(a), consistent with controlling District of Massachusetts precedent.

### d. The Factual Negation of Regulatory Justification (Danger and Flight Risk)

The authority of the Government to impose civil detention is limited to what is necessary to ensure the alien's appearance (flight risk) or to protect public safety (dangerousness). The record, primarily established by the Government's Declaration of AFOD Keith Chan (Doc. No. 8-1), fundamentally dismantles both premises.

Regarding dangerousness, the Declaration itemizes two criminal justice interactions between 2021 and 2025 (Chan Decl. at ¶¶ 14-15). Aside from his interactions with immigration officials, Petitioner has only interacted with law enforcement twice: once in Washington, D.C. on February 18, 2024, and once in Chelsea, Massachusetts on August 12, 2025. *Id*. Petitioner has not

been convicted of any offense charged. The Government is, therefore, attempting to subject an individual with no criminal convictions to a mandatory detention scheme typically reserved for criminal aliens (8 U.S.C. § 1226(c)).

Regarding flight risk, the Petitioner's pursuit of legal status, including the timely filing of an asylum application, demonstrates an intent to remain legally and fully prosecute his claims. After living unmonitored for over three and a half years, with his next Master Calendar hearing, for which he is represented, previously scheduled for 2026, his continued detention is no longer necessary to ensure his appearance. Absent evidence of danger or flight risk, the continued restraint constitutes arbitrary punishment, which instantly transforms the custody into an unlawful detention subject to habeas relief under 28 U.S.C. § 2241(c)(3).

## V. DETENTION WITHOUT A BOND HEARING VIOLATES THE FIFTH AMENDMENT

Even if the Court were to accept the Respondents' flawed statutory analysis, Petitioner's continued detention without an individualized custody review hearing violates his fundamental rights to procedural and substantive due process under the Fifth Amendment.

### a. The Vesting of Due Process Rights for Aliens of Established Presence

The Respondents rely heavily on cases such as *DHS v. Thuraissigiam*, 591 US __ (2020) and *Mezei* (*Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)), arguing that Petitioner, as an applicant for admission, is only entitled to the procedural rights afforded by statute, regardless of location. However, this argument fails to account for the crucial transition in Petitioner's status that occurred between January 2022 and August 2025.

The Supreme Court and the First Circuit have consistently recognized a distinction between aliens seeking initial entry ("at the threshold") and aliens who have made a physical entry and

established a presence in the country, even if they remain technically inadmissible or deportable. Petitioner was formally released into the country on bond and parole and was permitted to live and pursue his asylum claim for 3.5 years. During this time, Petitioner established connections and a physical presence that vests him with due process protections substantially greater than those of an alien newly apprehended at the border. The denial of *any* procedure—such as a bond hearing—to challenge this prolonged interior civil detention is fundamentally arbitrary and violates the protection against unlawful bodily restraint.

### b. Continued Mandatory Detention is Punitive and Serves No Legitimate Regulatory Purpose

Civil immigration detention is regulatory in nature, justified only by the need to ensure the alien's appearance for removal proceedings or to mitigate a demonstrated danger to the community. When detention ceases to serve these legitimate governmental purposes, it transforms into punitive custody, violating substantive due process.

The Petitioner's individual circumstances strongly undermine the regulatory justifications for mandatory, non-reviewable detention. Petitioner has an active, live asylum claim, having received a favorable IJ finding that transitioned his case to full removal proceedings. Furthermore, he successfully complied with supervision for years after his initial release. While the Respondents point to recent criminal arrests, Petitioner has not been convicted of any crime, and the Massachusetts state court released him on his own recognizance for the exact charges ICE is now using to justify his mandatory detention.

A mandatory detention scheme that denies all opportunity to demonstrate that the individual poses neither a flight risk nor a danger, particularly one imposed after years of conditional release, is punitive. The First Circuit recognized in *Hernandez-Lara v. Lyons*, 10 F.4th

19 (1st Cir. 2021), that due process often requires that the government bear the burden of proof (by clear and convincing evidence) to justify continued custody to protect an individual's liberty interests. The IJ's reliance on the *Matter of M-S-* policy to deny *any* redetermination hearing deprived the Petitioner of this essential procedural protection.

### c. The Challenge is to the Authority, Not the Duration

Respondents preemptively argue that Petitioner's detention, which had lasted approximately 1.5 months at the time of their filing, cannot be considered "unreasonably prolonged" under the framework established for post-final order detention (8 U.S.C. § 1231). *See* Doc. 8 (p. 16, fn 5).

This argument entirely misconstrues Petitioner's claim. Petitioner is not challenging the length of detention under the standard of *Zadvydas v. Davis* (which addresses indefinite post-removal detention) or the duration of detention under *Demore v. Kim* (which addresses the duration of detention for certain criminal aliens under § 1226(c)). Instead, the challenge is to the government's *authority* to impose a mandatory, non-reviewable detention based on a fundamentally flawed statutory interpretation.

The constitutional violation occurred the moment the IJ, relying on the administrative policy of *Matter of M-S-*, asserted jurisdiction under § 1225 and denied Petitioner *any* procedural mechanism to challenge his custody. This rejection of the right to a hearing is a violation of procedural due process that requires an immediate remedy, regardless of the brief time elapsed since the arbitrary custody decision was rendered.

## VI.     CONCLUSION AND PRAYER FOR RELIEF

The Respondent's argument that Diego Leandro Velasquez Rincon is subject to mandatory detention under 8 U.S.C. § 1225 fails as a matter of law. The undisputed facts demonstrate that the initial expedited removal process was terminated by the filing of the NTA and the vacatur of the I-860 in January 2022. Since that time, Petitioner's removal proceedings have been governed by 8 U.S.C. § 1229a, and his detention authority is governed by the discretionary regime of 8 U.S.C. § 1226(a).

The government's attempt to maintain mandatory detention based solely on the administrative decision in *Matter of M-S-* contradicts the plain text of the INA and the consistent judicial findings of the District of Massachusetts in highly similar cases, which mandate the transfer to discretionary detention under § 1226(a). To deny Petitioner an individualized custody hearing under these circumstances constitutes an arbitrary deprivation of liberty, violating the Fifth Amendment.

WHEREFORE, Petitioner respectfully requests that this Honorable Court:

1. Declare that Petitioner's detention pursuant to 8 USC § 1225 is unlawful
2. Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately on personal recognizance, or, in the alternative,
    A. Order the Respondents to immediately provide Petitioner with an individualized custody redetermination hearing under 8 U.S.C. § 1226(a) within ten (10) days of this Order, consistent with controlling District of Massachusetts precedent.

3. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and grant any further relief this Court deems just and proper.

Date: 10/14/2025

Respectfully Submitted,
Diego Leandro Velasquez Rincon
By His Attorney,

*/s/ Elizabeth Shaw*
_____
Elizabeth Shaw, Esq. | BBO #: 713541
Law Offices of Rachel L. Rado, LLC
175 Portland Street, 2nd Floor.
Boston, MA 02114
(t) 617-871-6030 | (f) 877-246-8795
(e) eshaw@rachelradolaw.com